J-S36018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| IN THE INTEREST OF: K.J.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 713 WDA 2025 |

Appeal from the Order Dated May 14, 2025
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2024-00045

| IN THE INTEREST OF: J.S.H.-M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 714 WDA 2025 |

Appeal from the Order Entered May 13, 2025
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2024-00045

| IN THE INTEREST OF: C.D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.R.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 715 WDA 2025 |

Appeal from the Order Entered May 15, 2025
In the Court of Common Pleas of Blair County Orphans' Court at No(s):
2024-00045

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                **FILED:  January 22, 2026**

Appellant J.R.H. (Mother) appeals[1] from the order terminating her parental rights to C.D.H., K.J.H., and J.S.H.-M. (collectively Children).  Mother argues that the Agency failed to establish grounds to terminate Mother's parental rights by clear and convincing evidence.  We affirm.

The orphans' court summarized the factual history as follows:

[Father] and [Mother] are the natural parents of three minor children, C.D.H., DOB 6/**/2020; K.J.H., DOB 2/**/2022; and J.S.H.-M., DOB 2/**/2024.  The parents have never been married.  Father has two other minor children who are twins and who live with Father.  Father has raised the twins on his own since the time they were 18 months old.  Both are scheduled to graduate from high school in the near future and one of them plans to work for a year and then decide on a long-term plan and the other plans to attend college.  The twins have succeeded academically and both work after school.  One of the twins also competes in track.  The twins appear to be successful and raised well under their Father's care.

C.D.H. was adjudicated dependent on April 20, 2022 and was placed in [a] foster home.  K.J.H. was adjudicated dependent on March 14, 2022 and placed in the [the same foster home as C.D.H.].  Mother was incarcerated in 2022 and released in November of 2022 after resolving charges of simple assault and harassment.  It is clear that Mother has struggled with mental health issues and had been attempting to address those issue[s] at one time with Doo Whan Cho, M.D. in late 2022 and early 2023.  However Mother's attempts to address her mental health issues trailed off thereafter and those issues remain un-redressed.  The

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court denied the petition of Blair County Children Youth and Families (the Agency) to terminate the parental rights of J.M.M. (Father) within the same order.  The Agency filed a separate appeal from the termination order, which we address in a separate memorandum.

parties had an on-again, off-again relationship which resulted in the birth of J.S.H.-M. in February of 2024.

A voluntary safety plan was agreed upon by the parties on February 18, 2024 after J.S.H.-M.'s birth when Mother tested positive for non-prescription tricyclics. The plan was for the child to live with his parents with Father to be the primary caretaker and to fully supervise the child. However, an argument between the parents led Father to attempt to evict Mother from the home despite the fact that Mother was nursing J.S.H.-M. This court granted an emergency protective order and J.S.H.-M. was life-flighted to Children's Hospital of Pittsburgh on suspicion of jaundice and meningitis. J.S.H.-M. was ultimately discharged and placed in [a different foster home than his brothers] and reunification services were provided.

Mother's mental health issues made clear that she was unfit to care for [] Children. Father testified that this was clear soon after C.D.H. was born when Mother was nominally primarily caring for C.D.H. Even though Father's paternity was initially in doubt, he testified that neither C.D.H. nor K.J.H. was ever left with Mother unsupervised. Mother was always with Father or Mother's grandmother when she had the older boys, Father also testified that despite paternity doubts he always treated [] Children as his own.

Reunification services with the parents jointly did not work due to disputes between the parents. The Agency became concerned with Mother's inability to care for [] Children and Father's lack of protective instincts and actions as to [] Children with respect to Mother. As explained below, the hearings established that the Agency is also concerned relative to Father's own parenting skills in regards to protection of [] Children.

Reunification efforts afforded the parents visitation through FICS,[2] Kid's First, and the Agency itself. In summary, with detail to follow below, reunification with Mother essentially failed. As to Father, reunification efforts remain problematic according to the Agency, despite the fact that all parties appear to agree, as does the court, that Father's visitations and efforts were more successful.

_____

[2] Family Intervention Crisis Services. *See* N.T., 1/30/25, at 50; *see also In re S.G.*, 922 A.2d 943, 945 (Pa. Super. 2007).

- 3 -

The Agency filed petitions for the termination of parental rights as to both Mother and Father as to all three Children on December 30, 2024. The Agency brings its petition[s] as to C.D.H. and K.J.H. pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8) and (b) and as to J.S.H.-M. pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5) and (b). The Agency also filed petitions seeking to change the primary permanency goal from return home to adoption.

Hearings on this case were conducted on January 30, 2025, April 22, 2025, and April 29, 2025.[3] Mother appeared on the first day of this three-day hearing but did not appear on the last two days of hearing. Mother's counsel attempted to contact Mother on several occasions to no avail. Mother did however file a PFA[4] petition against Father arising out her last contact with Father on March 23, 2025[,] when Father called law enforcement to remove Mother from Father's home. The temporary PFA Petition was denied and Mother failed to appear for the following PFA hearing, and as such it was dismissed. Father and his current licensed professional counselor, Joanne Butz, opined that Mother had filed the PFA petition to sabotage his present efforts to obtain custody of [] Children. We agree with that contention and give no weight to Mother's filing of the PFA Petition.

---

[3] Children were represented by Tyler A. Rowles, Esq., who served both as Children's guardian *ad litem* (GAL) and as Children's legal counsel. **See** Orphans' Ct. Order, 1/25/25 (appointing Attorney Rowles as both GAL and Children's legal counsel). In its May 14, 2025 opinion and order, the orphans' court concluded that Attorney Rowles could serve in both roles because there was no conflict between Children's best interests and legal interest "especially in light of the tender ages of [] Children." Orphans' Ct. Op. & Order, 5/14/25, at 21. We note that the orphans' court is obligated to determine whether a conflict in dual representation exists **prior** to appointing counsel. **See In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020). However, we decline to elevate form over substance and conclude that the orphans' court fulfilled its obligation to determine whether a conflict in dual representation existed. **See id.** at 1235-37; 23 Pa.C.S. § 2313(a); **see also In re S.L.M.R.'S.**, 3156 EDA 2024, 2025 WL 1554922, at *2 n.5 (Pa. Super. filed June 2, 2025) (unpublished mem.); Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

[4] The Protection From Abuse Act, 23 Pa.C.S. §§ 6101-6122.

The Agency presented exhibits and the following witnesses in support of its petitions: Terry O'Hara, Ph.D., a licensed psychologist with forensic specialty; Ashley Cadle, owner and operator of Nursery Rhymes Child Care Center; Erin Rummell, an assistant teacher at daycare for C.D.H. and K.J.H.; Jeannie Lashlee, a clinician providing behavioral services to C.D.H. and K.J.H. from Youth Advocate Programs; Shannon Cameron, family services supervisor at Kid's First; Britton Mau[k] FICS Supervisor; and Ariel Icen[h]our, [an Agency] caseworker.

Father presented exhibits and the testimony of [S]hantel Green, [an Agency] case aide; Danielle Barkman, [an Agency] Case Aide Unit supervisor; Joanne Butz, Father's licensed professional counselor; and Father himself.

Mother presented no evidence.

Orphans' Ct. Op. & Order, 5/14/25, at 1-5 (footnote omitted and some formatting altered).

By an opinion and order dated May 13, 2025, and entered May 14, 2025, the orphans' court terminated Mother's parental rights. Mother timely filed notices of appeal and corresponding concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed a Rule 1925(a) opinion adopting the reasoning of its May 14, 2025 opinion and order.

On appeal, Mother presents the following issue:

Whether the [orphans'] court erred and/or abused its discretion in terminating the parental rights of only Mother, as the record reflects that there was not sufficient evidence presented to support the involuntary termination.

Mother's Brief at 4.

We begin with our well-settled standard of review:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super. 2023) (citations omitted);

*see also In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (explaining that

"the trial court is free to believe all, part, or none of the evidence presented,

and is likewise free to make all credibility determinations and resolve conflicts

in the evidence" (citation omitted and some formatting altered)).

Termination of parental rights is governed by Section 2511 of the

Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We

need only agree with the orphans' court as to any one subsection of Section

2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

## Section 2511(a)(2)

Mother argues that the evidence was insufficient to support the orphans' court's conclusion that termination of Mother's parental rights was warranted under Section 2511(a)(2). Mother's Brief at 14-17. Specifically, Mother contends that "[t]hroughout the pendency of the dependency proceedings, Mother showed progress and compliance with mental health services, the [A]gency, and reunification." ***Id.*** at 15. Mother acknowledges that when Children were adjudicated dependent, Agency had concerns about Mother's mental health issues and Mother's medication. ***Id.*** Mother claims that she has received both medication and case management services. ***Id.*** at 15-16. Further, Mother argues that the Agency imposed a requirement for the reinstatement of Mother's visitation with Children that was impossible to fulfill. Specifically, Mother claims that the Agency required her to obtain a letter from a doctor confirming that she had not displayed psychotic symptoms for thirty days was impossible for her to comply with because no doctor would meet with her for thirty consecutive days. ***Id.*** at 6-7, 16.[5] Mother contends that

---

[5] We note that Mother includes argument about the reasonableness of this doctor's letter requirement in the statement of the case portion of her brief. ***See*** Mother's Brief at 6-7. This is a violation of the Rules of Appellate Procedure. ***See*** Pa.R.A.P. 2117(b) (stating that "[t]he statement of the case **shall not contain any argument**. It is the responsibility of appellant to present in the statement of the case a **balanced presentation of the history of the proceedings** and the respective contentions of the parties" (emphases added)).

parents had remedies FICS' concerns about their residence by obtaining a new residence where visitation and reunification services could take place. *Id.* at 16.

Section 2511(a)(2) provides as follows:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

To satisfy the requirements of [Section] 2511(a)(2), the moving party must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.

*In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citations and quotation marks omitted).

Additionally, this Court has explained:

Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2)

should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it[.]

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (citations omitted and formatting altered).

Further, this Court has stated that a "child's need for consistent parental care and stability cannot be put aside or put on hold." *In re K.M.W.*, 238 A.3d 465, 474 (Pa. Super. 2020) (*en banc*) (citation omitted and some formatting altered).

Thus, while "sincere efforts to perform parental duties," can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." *In re A.L.D.*[, 797 A.2d 326, 340 (Pa. Super. 2002)]. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.*

*In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (some citations omitted and formatting altered).

Here, the orphans' court explained:

The Agency has presented clear and convincing evidence that Mother has repeatedly neglected all three of [] Children. While Mother began to address her mental health issues with Dr. Cho, the record demonstrates that Mother has not resolved her issues and that she shows no sign at this time in being able to do so. She has been incarcerated, homeless, and without any stability throughout these proceedings. It appears to the court that she has also attempted to sabotage Father's efforts to be a father to [] Children.

- 9 -

Dr. O'Hara has noted that Mother has not addressed her mental health issues and that she has "very significant parenting deficits". She does not respond to [] Children even when they are crying out. Dr. O'Hara opines that Mother should not even have supervised visitation with [] Children.

Mr. Mau[k] testified that Mother's visits closed on May 6, 2024 after she advised that she could not re-unify with [] Children and it was of no use trying. The court notes that Ms. Icen[h]our testified that Mother has four other children and that she has custody of none of them. Ms. Green testified that at her visits with [] Children, Mother never brought food for [] Children or any money for support. Ms. Barkman testified that Mother's visits deteriorated to the point that it was unsafe to continue the visitations.

It is apparent to the court that Mother's ability to parent is non-existent and that there is no reasonable possibility that she possesses the ability to change that sad situation.

Orphans' Ct. Op. & Order, 5/14/25, at 11-12 (some formatting altered).

Following our review of the record, we discern no abuse of discretion by the orphans' court. *See H.H.N.*, 296 A.3d at 1263. The record establishes that around October of 2022, the dependency court suspended Mother's visitation with C.D.H. and K.J.H.[6] due to her mental health issues. *See* Permanency Review Order, CP-07-DP-20-2022, 10/11/22, at 6-10 (order stating that Mother's visitation was suspended pending further mental health treatment). However, the record also reflects that Mother had supervised visits with Children from September of 2023 to March of 2025. *See* N.T., 4/22/25, at 119, 131, 141-42, 144; N.T., 4/29/25, at 22, 32, 42. Therefore, to the extent Mother argues that the Agency had obstructed her efforts to

_____

[6] This occurred prior to the birth of J.S.H.-M. in February of 2024.

reunify with Children by imposing conditions regarding her mental health treatment that she could not fulfill, that claim is belied by the record.

Dr. O'Hara testified that Mother does not respond to Children when they are in need, including when an infant was "crying out wanting to be fed and [Mother was] just not prioritizing this, struggling to focus[, and] not being in tune to" Children's needs. N.T., 1/30/25, at 10. He further explained that in his opinion, that "[t]here's a lot of safety issues and risks for [] Children even within the context of supervised contact with their mother." *Id.* at 21-22 (some formatting altered). Several witnesses testified regarding safety concerns they had about Mother during her supervised visits with Children. *See* N.T., 4/22/25, at 152-55; N.T., 4/29/25, at 16, 33, 37-39. Additionally, as the orphans' court noted, Britton Mauk, FICS's reunification program supervisor, testified that Mother asked to discontinue reunification services with FICS because she believed that she could not be reunified with Children. *See* N.T., 4/22/25, at 119-20, 142-43.

For these reasons, we conclude that the orphans' court did not abuse its discretion in concluding that termination was appropriate under Section 2511(a)(2).[7] *See H.H.N.*, 296 A.3d at 1263; *K.M.W.*, 238 A.3d at 474; *C.M.K.*, 203 A.3d at 262; *Z.P.*, 994 A.2d at 1117-18. Accordingly, Mother is not entitled to relief on this claim.

---

[7] We reiterate that we need only agree with the orphans' court as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *See B.L.W.*, 843 A.2d at 384.

## Section 2511(b)

Mother argues that the Agency failed to perform a bonding assessment and that severing the bond between Mother and Children will have a detrimental and negative effect on Children. Mother's Brief at 20-22.

Section 2511(b) states:

> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)), *abrogated in part on other grounds by In re K.T.*, 296 A.3d 1085 (Pa. 2023).

Our Supreme Court has stated that "if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which 'is not always an easy task.'" *K.T.*, 296 A.3d at 1106 (quoting *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013)). In *K.T.*, our Supreme Court explained that "a court conducting the Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond." *Id.* at 1113; *see also id.* at 1110-11 (stating that "by evaluating the impact of severance to determine if it will impose more than an adverse or detrimental impact, courts correctly refine their focus on the child's development and mental and emotional health rather than considering only the child's 'feelings' or 'affection' for the parent, which even badly abused and neglected children will retain" (citations and footnote omitted)). Indeed, the *K.T.* Court emphasized that "the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." *Id.* at 1113.

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 71 A.3d at 268 (citation

- 13 -

omitted). Courts must consider "the child's need for permanency and length of time in foster care[;] whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical and emotional needs, including intangible needs of love, comfort, security, safety, and stability." **K.T.**, 296 A.3d at 1113 (footnote omitted and formatting altered).

"Section 2511(b) does not require a formal bonding evaluation[]" and caseworkers may offer their opinions and evaluations of the bond. **Z.P.**, 994 A.2d at 1121 (citation omitted); **see also In re Adoption of J.N.M.**, 177 A.3d 937, 944 (Pa. Super. 2018) (stating that "the orphans' court is not required by statute or precedent to order a formal bonding evaluation be performed by an expert" (citation omitted)).

In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." **T.S.M.**, 71 A.3d at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." **Id.**

Here, the orphans' court explained:

> For the reasons set forth above, we find that the Agency has carried its burden as to Section 2511(b). Mother has done nothing positive to advance or provide for the emotional needs and welfare of [] Children. There is no evidence of any bond or love. She has provided only chaos as opposed to security and stability.

Orphans' Ct. Op. & Order, 5/14/25, at 21.

Following our review of the record, we discern no abuse of discretion by the orphans' court in concluding that termination of Mother's parental rights would best serve Children's developmental, physical, and emotional needs and welfare. *See **K.T.***, 296 A.3d at 1113; ***T.S.M.***, 71 A.3d at 267. We also conclude that the orphans' court's findings are supported by the record. ***See H.H.N.***, 296 A.3d at 1263. As explained above, "the parental bond is but one part of the overall subsection (b) analysis[.]" ***See K.T.***, 296 A.3d at 1113. Further, the focus of the Section 2511(b) analysis is on a child's development and mental and emotional health, not the child's affection for a parent. ***See id.*** at 1110-11. Further, a formal bonding evaluation is not required. ***See J.N.M.***, 177 A.3d at 944.

Here, Dr. O'Hara testified that during his evaluation of Mother in April of 2024, Mother "appear confused," made references to "'playing games with my own head,'" "lacked independent housing, acknowledged impulsivity, frequent irritability, panic, depressed mood, [and] anxiety," and was experiencing side effects from her medication. N.T., 1/30/25, at 66. Dr. O'Hara explained that children exposed to parents with unaddressed significant mental health issues have a greater risk of developing mental health issues, behavioral concerns, difficulties in school, substance abuse and stress-related medical issues. ***See id.*** at 11-12. He stated that "given [Mother's] lack of psychological stability, I think there's limits to the potential detriments that [] Children would have if their relationship with her were to be terminated." ***Id.*** at 21 (some formatting altered). Dr. O'Hara opined that Children's relationships with their respective

foster parents "can be a mitigating factor against [any] potential detriment[]" caused by the termination of Mother's parental rights and removal from their respective foster homes would be a "substantial psychological detriment" for Children. *Id.* at 22-23. Additionally, Ms. Barkman testified that Mother's supervised visits were "chaotic," with Children between January and February of 2025. N.T., 4/29/25, at 37. C.D.H. stated he did not want to visit, cried, and threw fits, but Mother did not make any efforts to connect with Children, and C.D.H. and K.J.H. had "zero connection with" Mother. *Id.* at 37-39.

For these reasons, we discern no abuse of discretion by the orphans' court in concluding that termination was appropriate under Section 2511(b). *See H.H.N.*, 296 A.3d at 1263; *C.D.R.*, 111 A.3d at 1219. Therefore, Mother is not entitled to relief, and we affirm the order terminating Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE:  1/22/2026

- 16 -